**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GEOFFREY K. FERGUSON,**

               **Petitioner,**                        **CASE NO. 2:10-CV-752**
                                                **JUDGE WATSON**
     **v.**                                      **MAGISTRATE JUDGE KING**

**WARDEN, TOLEDO CORRECTIONAL
INSTITUTION,**

               **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Return of*

*Writ,* Doc. No. 12, Petitioner's *Reply*, Doc. No. 16, and the exhibits of the parties. For the reasons

that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case as follows:

> The Franklin County Grand Jury indicted appellant on one count of
> rape in violation of R.C. 2907.02(A)(1)(b). The indictment stated that
> the rape victim, D.W., was four years old during the incident, and the
> indictment alleged that the rape occurred "from on or about March
> 21, 2006 to March 22, 2006." Appellant pleaded not guilty and
> exercised his right to a jury trial.
>
> At the time of the trial, D.W. was almost six years old. The trial court
> held a hearing to determine whether D.W. was competent to testify.
> D.W. indicated that he is able to tell the truth, that it is important to
> tell the truth, and that lying is wrong. D.W. conveyed these answers
> by nodding his head to show affirmative responses to the trial court's
> questions. D.W. also claimed that he did not know what a lie was,
> and when asked why it is improper to lie, D.W. responded "because
> * * * [p]eople be taking you to college." (Tr. 50-51.)

D.W. initially said that his favorite cartoon character was real, but then said that the character was fake. He acknowledged that the people in the courtroom were real. He gave his name, age, and birthday. He said that he was in kindergarten, and he named his teacher and school.

D.W. also claimed that appellant raped him in the summer. The trial court asked D.W. if he was sure the incident did not occur in the winter, and D.W. reiterated that the incident took place in the summer. However, when the trial court asked D.W. where the rape occurred, D.W. stated "[i]n winter." (Tr. 52.) When the trial court repeated the question about where the rape occurred, D.W. said, "[h]ouse" and made a motion toward appellant. (Tr. 52.) The trial court interpreted this as D.W. indicating that the rape occurred at appellant's house. D.W. also said that another child, E.A., was present during the rape.

After the hearing, the trial court found D.W. competent to testify. The trial court recognized that D.W. knows that it is wrong to lie and that he is supposed to tell the truth. Appellant's counsel objected.

Next, plaintiff-appellee, the State of Ohio ("appellee"), called its witnesses to testify, including D.W.'s mother, Clarinda, who testified as follows. Clarinda and appellant became friends and planned to marry until Clarinda finally decided against the marriage. Appellant is not D.W.'s father, but he financially supported D.W. Appellant and D.W. maintained a "[f]ather and son" relationship, and D.W. visited appellant often. (Tr. 206.) Eventually, D.W. did not want to visit appellant anymore, and told Clarinda what appellant did to him. Thereafter, Clarinda contacted appellant and said, "when I catch you, I am going to kill you." (Tr. 211.)

Kerri Marshall also testified. Marshall is a social worker and medical forensic interviewer employed by the Child Assessment Center of the Center for Child and Family Advocacy at Columbus Children's Hospital ("Assessment Center"). At the Assessment Center, Marshall interviews sex abuse victims, and a doctor or nurse examines the victims afterward. Marshall does not conduct the interview with other people present with the victim, but the police and prosecutors may watch the interview through closed-circuit television. The police and prosecutors do not control Marshall's interview, and Marshall does not change the way she interviews if the police and prosecutors are watching. Marshall discusses her interview with the doctor or nurse responsible for examining the victim at the Assessment Center. This

discussion helps the doctor or nurse with the physical examination. Marshall interviewed D.W. about appellant raping him, and Marshall wrote a report about her interview. The interview was also video recorded, and the trial court allowed appellee to play the video for the jury over appellant's counsel's objection. The video depicted the following. Marshall told D.W. that she was going to ask him questions and that he was going to see a doctor after the questioning. D.W. asked if the doctor was going to give him a shot, and Marshall said that she did not know. D.W. said that the doctor who was going to examine him was not his doctor. Marshall indicated that D.W. was correct, and Marshall told D.W. that the doctor he was going to see was named Dr. Thackeray. D.W. wanted to meet Dr. Thackeray, and Marshall took D.W. out of the interview room to introduce him to the doctor. Afterward, Marshall and D.W. returned to the interview room, and the interview resumed. Initially, when Marshall resumed questioning, D.W. referred to appellant as "fat Geoff," and D.W. told Marshall that "fat Geoff" put his "winkie" in D.W.'s mouth. (Tr. 101.) D.W. said that this took place five times. Marshall showed D.W. an anatomical drawing of a man, and D.W. identified the penis in the drawing as a "winkie." (Tr. 109.) D.W. said that the rape occurred in "daddy Geoff's room." (Tr. 112.) D.W. said that appellant's son, E.A., saw the rape, and D.W. said that "fat Geoff" put his "winkie" in E.A.'s mouth, too. (Tr. 114.) D.W. asked Marshall to tell the doctor what "fat Geoff" did to him, and Marshall said that she would. Marshall also said that the doctor would check D.W.'s mouth.

The video ended, and Marshall testified that Dr. Thackeray examined D.W. after the interview. According to Marshall, Dr. Thackeray used information from her interview to examine D.W.

On cross-examination, appellant's counsel asked Marshall about the section of her interview report that refers to the victim's competency. The section contains two pre-written statements: (1) "[t]he child is able to understand truth," and (2) "[t]he child is able to understand the consequences of a lie." (Exhibit 18.) The word "[n]o" is specified after each statement. (Exhibit 18.) Marshall testified that the Assessment Center does not use the competency section of the report anymore. Marshall also noted that she did not ask D.W. to define a truth or a lie and did not assess whether D.W. was able to understand the consequences of a lie because D.W. was only four years old when she interviewed him. Marshall also explained that she did not assess D.W.'s knowledge about truth-telling and lying because D.W. spontaneously disclosed the rape at the beginning of the interview, and Marshall did not want to change the course of the conversation.

On re-direct examination, Marshall testified that four-year-old children understand that telling the truth is good and that lying is bad, but these children may not be able to give definitions of the truth and a lie. Thus, Assessment Center medical forensic interviewers do not ask four-year-old children questions about truth-telling and lying. Lastly, Marshall reiterated that her role at the Assessment Center is to gather information from sex abuse victims "for purposes of medical diagnosis and treatment" and to give that information to the doctors or nurses who examine the victims. (Tr. 137.)

Dr. Thackeray also testified. Dr. Thackeray examines sex abuse victims at the Assessment Center. Dr. Thackeray consults with the medical forensic interviewers before he conducts his physical examination. The medical forensic interview assists Dr. Thackeray in testing, diagnosing, and treating the victims.

Dr. Thackeray examined D.W. at the Assessment Center. During the physical examination, Dr. Thackeray took "a history" from D.W. (Tr. 148.) In addition, Dr. Thackeray relied on Marshall's interview with D.W. to determine what tests he needed to perform during the physical examination. On cross-examination, Dr. Thackeray testified that he did not conduct his own interview on the subject of appellant raping D.W.

Next, D.W. testified on appellee's behalf over appellant's counsel's objection. D.W. identified appellant as "Geoff." (Tr. 233.) D.W. testified that appellant put his "winkie" in D.W.'s mouth. (Tr. 235.) He said that the rape occurred in the winter at appellant's house and that appellant put his "winkie" in the child's mouth one time. (Tr. 237.) Appellee showed D.W. the anatomical drawing of a man that Marshall previously used, and D.W. identified the penis in the drawing as a "winkie." (Tr. 236.)

Grove City Police Detective Rick Steller testified on behalf of appellee that he investigated D.W.'s rape. The detective stated that he once went to appellant's house during the investigation, and a woman at the house gave the detective permission to take photographs inside the house. According to Detective Steller, appellant was not home at the time. On cross-examination, appellant's counsel asked Detective Steller about his investigation. Detective Steller noted that he (1) watched Marshall interview D.W. over closed-circuit television, (2) did investigative work at appellant's house, and (3) sent evidentiary samples to a crime lab for testing. Appellant's counsel then asked,

"[a]nd that is the only independent investigation that you conducted, right?" (Tr. 187.) Detective Steller answered, "[y]es. Well, there was one attempt to speak with [appellant] of this incident, but that was declined." (Tr. 187.) Appellant's counsel then requested a side-bar conference, but the conference was held off the record.

Thereafter, appellee submitted into evidence Marshall's interview report. In the competency section of Marshall's interview report, Marshall noted that she did not assess D.W. for his understanding of the truth or a lie because D.W. spontaneously disclosed the rape at the beginning of the interview. In the report's summary section, Marshall stated that D.W.'s rape disclosure "was clear, coherent and consistent." (Exhibit 18.) Additionally, appellee submitted into evidence Dr. Thackeray's medical report. The medical report referred to Marshall's report and D.W.'s rape disclosure. Appellant's counsel objected to the admission of these reports, but the trial court overruled the objection and admitted them.

E.A., a five-year-old child, testified on appellant's behalf after the trial court found him competent to testify. E.A. identified appellant as his father, and E.A. called his father "[f]at Geoff." (Tr. 253.) E.A. testified that he never saw appellant put anything in D.W.'s mouth and that appellant never put anything in E.A.'s mouth.

Appellant testified on his own behalf that he did not put his penis in D.W.'s mouth. Appellant also testified that Clarinda threatened him when she confronted him about the rape. On cross-examination appellant noted that, after Clarinda confronted him about the rape, she threatened him more than the one time Clarinda mentioned at trial. Appellee asked appellant if he told the police about these threats, including after the police started to investigate the rape. Appellee also asked appellant if he contacted an attorney about Clarinda threatening him. Appellant's counsel objected to these questions, but the trial court overruled the objections. Appellant answered that he did not inform the police or an attorney about Clarinda's threats.

Thereafter, appellant's counsel argued that appellee improperly questioned appellant about whether he spoke with the police during the rape investigation. Appellant's counsel argued that the questions improperly challenged appellant for exercising his right against self-incrimination under the Fifth Amendment to the United States Constitution. Appellant's counsel asked the trial court to instruct the jury to disregard appellee's questions concerning appellant's

interaction with the police. The court declined to give the instruction.

Appellant's counsel also argued that appellee improperly questioned appellant about whether he spoke with an attorney during the rape investigation. Appellant's counsel claimed that the question improperly challenged appellant for decisions concerning his right to an attorney under the Sixth Amendment to the United States Constitution. Appellant's counsel did not ask for a jury instruction on the question, however.

The jury found appellant guilty of rape.

*State v. Ferguson*, No. 07AP-999, 2008 WL 5265893, at *1-4 (Ohio App. 10th Dist. Dec. 18, 2008).

Petitioner filed a timely appeal, raising the following assignments of error:

I. The Trial Court erred by admitting the testimony of the minor child, D.W.

II. The Trial Court erred in admitting into evidence the statements made by the minor child, D.W., to the employees of the Child Assessment Center.

III. The Trial Court erred in admitting evidence of Defendant's silence prior to trial in violation of Defendant's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

IV. The Trial Court erred in failing to give a corrective or limiting instruction regarding the evidence of Defendant's silence prior to trial.

V. Defendant's rights under the Sixth Amendment to the United States [C]onstitution were violated due to the ineffectiveness of trial counsel.

*Id*. at *4. On December 18, 2008, the appellate court affirmed the trial court's judgment. *Id*. On

May 6, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Ferguson*,

121 Ohio St.3d 1475 (2009).

On August 4, 2009, still represented by counsel, Petitioner filed a delayed application to

reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the

effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the trial court improperly found the child witness competent to testify and permitted a social worker to testify regarding the credibility of the alleged victim and claims that the evidence was constitutionally insufficient to sustain his conviction and that the conviction was against the manifest weight of the evidence. *Exhibit 20 to Return of Writ*. On December 29, 2009, the appellate court denied Petitioner's Rule 26(B) application for failure to show good cause for the untimely filing. *Exhibit 22 to Return of Writ.* Petitioner apparently did not file an appeal from that decision to the Ohio Supreme Court.

On April 8, 2010, proceeding *pro se*, Petitioner filed a second Rule 26(B) application. *Exhibit 23 to Return of Writ*. On July 15, 2010, the appellate court dismissed that application as successive and untimely. *Exhibit 25 to Return of Writ.* On July 24, 2010, Petitioner filed his third Rule 26(B) application. *Exhibit 26 to Return of Writ.* On August 31, 2010, the appellate court dismissed that application. *Exhibit 28 to Return of Writ*. Petitioner filed a motion for reconsideration, which the appellate court denied on October 21, 2010. *Exhibit 31 to Return of Writ.*

On August 2, 2010, Petitioner filed this action. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States because the trial court improperly determined that the minor child, Dante Watkins, was competent to testify and permitted the introduction of evidence of Petitioner's pre-arrest silence; because he was denied the effective assistance of trial counsel when his attorney elicited evidence regarding Petitioner's pre-arrest silence; and because the indictment improperly failed to include an allegation of recklessness. It is the position of the Respondent that these claims are waived or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This

"cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In claim one, Petitioner asserts that he was denied a fair trial because the trial court improperly determined that the alleged victim was competent to testify. Petitioner properly raised this claim on direct appeal; however, he failed to preserve this claim in his appeal to the Ohio Supreme Court. Further, Petitioner may now no longer present this claim to the Ohio Supreme Court by operation of Ohio's doctrine of *res judicata*.[1] *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex*

---

[1] Respondent also contends that Petitioner waived this claim by failing to present the claim as a federal constitutional issue to the state appellate court. Because claim one is waived in any event due to Petitioner's failure to raise the claim on appeal to the Ohio Supreme Court, this Court need not address this argument.

*rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still obtain review of this claim on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000)(citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). However, ineffective assistance of

counsel cannot constitute cause where, as here, there was no constitutional right to counsel in a direct appeal to the Ohio Supreme Court. *See Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415, 425 (6th Cir. 2003)(citing *Coleman v. Thompson,* 501 U.S. 722, 752-53 (1991); *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to counsel extends to the first appeal of right, and no further"); *Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir. 2005)). Claim one is therefore procedurally defaulted.

In claim two, Petitioner asserts that he was denied a fair trial by admission of testimony regarding his pre-arrest silence. Petitioner properly raised this claim on direct appeal; however, the state appellate court reviewed the claim for plain error only, due to Petitioner's failure to object at trial:

> [A]ppellant argues that we must reverse his conviction because of trial references to appellant not talking with police or an attorney before his arrest. We disagree.
>
> Appellant first challenges trial references to his pre-arrest invocation of the right against self-incrimination under the Fifth Amendment to the United States Constitution. In particular, appellant contends that the trial court erred by allowing Detective Steller to testify during appellee's case-in-chief that "there was one attempt to speak with [appellant] * * * but that was declined." (Tr. 187.) The record does not indicate that appellant's counsel objected to this testimony. Appellant's counsel requested a side-bar conference after this testimony, but the conference was not transcribed. Thus, we do not know the substance of the conference, and we will not infer that, during the conference, appellant's counsel objected to Detective Steller's testimony. Having failed to make a record of an objection, appellant forfeited the Fifth Amendment issue concerning Detective Steller's testimony, and we may only reverse appellant's conviction if plain error resulted from the detective's reference to appellant's pre-arrest silence. *See State v. Payne*, 114 Ohio St .3d 502, 2007-Ohio-4642, ¶ 15. See, also, Crim.R. 52(B) (stating that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Plain error exists when there is error, the error is an obvious defect in the trial proceedings,

and the error affects substantial rights. *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

Appellant relies on *State v. Leach,* 102 Ohio St.3d 135, 2004-Ohio-2147, to challenge Detective Steller's testimony. In *Leach,* a defendant was tried for kidnapping and sex offenses. *Id.* at ¶ 8. During its case-in-chief, the prosecution elicited a police sergeant's testimony that the defendant declined a pre-arrest interview. *Id.* at ¶ 5. The prosecution also referred to the defendant's pre-arrest silence during opening statements. *Id.* at ¶ 4. The Supreme Court of Ohio concluded that the prosecution improperly invited the jury to infer the defendant's guilt from the pre-arrest silence. *Id.* at ¶ 25. The court concluded that the use of a defendant's pre-arrest silence in the prosecution's case-in-chief as substantive evidence of guilt violates the defendant's right against self-incrimination under the Fifth Amendment. *Id.* at ¶ 30-31.

We do not find *Leach* applicable to Detective Steller's testimony, however. In *Leach,* the prosecutor mentioned the defendant's pre-arrest silence in her opening statement, the prosecution elicited testimony on the defendant's pre-arrest silence through its own initiative, and the prosecution used the testimony as evidence of the defendant's guilt. Here, Detective Steller testified about appellant's pre-arrest silence in response to defense counsel's question that implied that the detective's investigation was inadequate. The United States Supreme Court has held that the Fifth Amendment does not prohibit references to a defendant's invocation of the right against self-incrimination when the references are made in "fair response" to the defense's claims. *United States v. Robinson* (1988), 485 U.S. 25, 32-34. See, also, *Commonwealth v. DiNicola* (2003), 581 Pa. 550, 562 (applying *Robinson,* holding that the prosecution did not violate the defendant's Fifth Amendment rights when it elicited the police officer's testimony on the defendant's pre-arrest silence). Thus, we find no error, let alone plain error, under the Fifth Amendment for the trial court to allow the testimony.

Next, appellant cites to the portion of his cross-examination that involved questions about his pre-arrest silence. Appellant provides no argument to support this issue as App.R. 16(A) requires. We have authority to disregard issues raised in contravention of App.R. 16. See App.R. 12(A)(2); *Franklin Cty. Dist. Bd. of Health v. Sturgill* (Dec. 14, 1999), Franklin App. No. 99AP-362. Nevertheless, we find

no Fifth Amendment violation in appellant's cross-examination.

In *Jenkins v. Anderson* (1980), 447 U.S. 231, 238, the United States Supreme Court held that "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." When the defendant testifies, he "cast[s] aside his cloak of silence" and the impeachment "advances the truth-finding function of the criminal trial." *Id* .

Here, appellant testified on cross-examination that Clarinda threatened him multiple times after D.W. disclosed the rape. In contrast, Clarinda testified that she threatened him once after the disclosure. Appellee did not want the jury to believe appellant over Clarinda, and appellee attacked appellant's credibility through questions about why appellant never mentioned Clarinda's threats to the police despite numerous opportunities during the rape investigation. Pursuant to *Jenkins,* we conclude that appellee did not violate the Fifth Amendment when it impeached appellant with his pre-arrest silence. Therefore, the trial court did not err under the Fifth Amendment by allowing the cross-examination.

Lastly, appellant's third assignment of error cites the Sixth and Fourteenth Amendments to the United States Constitution. Appellant provides no argument concerning whether trial references to appellant's pre-arrest silence violated these constitutional provisions, however. Thus, we need not address these issues. See App.R. 12(A)(2); *Sturgill.*

In summary, we conclude that the trial court did not err by allowing references to appellant's pre-arrest silence.

*State v. Ferguson*, 2008 WL 5265893, at *10-12.

It is well settled in the Sixth Circuit that review by a state appellate court of an otherwise waived claim for plain error does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review. *See e.g.*, *Scott v. Mitchell,* 209 F.3d 854, 868 (6th Cir. 2000); *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Petitioner, however, argues that this Court should infer that defense counsel objected to evidence regarding his pre-arrest silence during the side-bar that was not transcribed. Additionally, Petitioner contends that the state appellate court conducted a

merits review of his claim. He argues that he has at least preserved for this Court's review a claim that the prosecutor improperly cross-examined him regarding his pre-arrest silence, because his attorney objected to this line of questioning and requested a curative instruction. *See Reply; Trial Transcript, Volume II,* at 310-313; 358.

This Court cannot presume that defense counsel objected when neither the trial record nor any part of the record before this Court supports such argument. Moreover, the state appellate court's alternative dismissal of petitioner's claim on the merits does not forgive the waiver or otherwise revive his claim for habeas corpus review. *Harris v. Reed,* 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding"); *Bowling v. Parker,* 344 F.3d 487, 498 (6th Cir. 2003)(where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted); *Kenney v. Haviland,* No. 1:04 CV 2194, 2006 WL 2792171, at *6 n. 8 (N.D. Ohio Sep.26, 2006) ("The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar"). As to Petitioner's claim that the prosecutor's cross examination violated his right to silence, the state appellate court noted it was not required to address this claim due to Petitioner's failure to comply with Ohio Appellate Rule 16. In any event, this claim plainly lacks merit.

As noted by the state appellate court, the United States Supreme Court held in *Jenkins v. Anderson,* 447 U.S. at 238-39, that the use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment because "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." *Id.* In *Jenkins*, as in this case, the defendant had remained silent prior to his arrest, but testified

on his own behalf at trial.  *Id.* at 236 n.2. *See also Portuondo v. Agard,* 529 U.S. 61, 69-70 (2000) (reiterating the holding in *Jenkins*).  Petitioner therefore cannot successfully argue that the state appellate court's decision contravened or unreasonably applied clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1), (2).

The Court assumes that Petitioner offers as cause for his procedural default of this claim the ineffective assistance of his defense counsel in improperly eliciting testimony regarding Petitioner's pre-arrest silence, as set forth in Petitioner's habeas corpus claim three.  The state appellate court rejected this claim as follows:

> [A]ppellant argues that his trial counsel rendered ineffective assistance. We disagree.
>
> The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id.* at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court need not address both *Strickland* components if the defendant makes an insufficient showing on either one. *Id.* at 697.
>
> A properly licensed attorney is presumed competent. *State v. Samatar,* 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 88, citing *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301. There is " 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, quoting *Strickland* at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment. *State v. Carter,* 72 Ohio St.3d 545, 558, 1995-Ohio-104. See, also, *State v. Carpenter* (1996), 116 Ohio App.3d 615, 626, citing *Bradley* at 144 (holding that we are to "presume that a broad range of choices,

perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness. *State v. Burgins* (1988), 44 Ohio App.3d 158, 160; *State v. Burks,* Franklin App. No. 07AP-553, 2008-Ohio-2463, ¶ 54.

Appellant first argues that his counsel was ineffective for eliciting Detective Steller's testimony about his pre-arrest silence. Detective Steller mentioned appellant's pre-arrest silence in response to defense counsel's cross-examination about the rape investigation. A trial counsel's line of questioning on cross-examination is a matter of trial strategy. *In re Brooks,* Franklin App. No. 04AP-164, 2004-Ohio-3887, ¶ 40. Ineffective assistance does not result from reasonable cross-examination that does not elicit a desired response. See *State v. Davis* (Sept. 5, 1991), Franklin App. No. 91AP333. Here, appellant's counsel made a reasonable decision to challenge the thoroughness of Detective Steller's rape investigation. Thus, appellant's counsel was not deficient in cross-examining Detective Steller, even though counsel did not elicit a desired response. *See Strickland* at 687; *Burgins* at 160; *Burks* at ¶ 54; *Brooks* at ¶ 40; *Davis.* Therefore, we conclude that appellant's trial counsel did not render ineffective assistance when he cross-examined Detective Steller. *Strickland* at 687.

*State v. Ferguson*, 2008 WL 5265893, at *12.

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the state court's decision is binding on this Court unless that decision is contrary to or

involves an unreasonable application of clearly established federal law as determined by the United

States Supreme Court:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or

> involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).

*Renico v. Lett*, 559 U.S. –, 130 S.Ct. 1855, 1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

First, the defendant must show that counsel's performance was

> deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

This Court is not persuaded Petitioner has established the denial of the effective assistance of counsel under the two-prong *Strickland* test.  As noted by the state appellate court, review of the record fails to reflect that defense counsel's strategy in cross-examining Detective Steller regarding the scope of his investigation, which elicited testimony that Petitioner had declined to be interviewed, was unreasonable.  "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010)(quoting *Strickland*, at 690).  Moreover, Petitioner cannot establish prejudice,

in view of the prosecution's later cross-examination of him regarding his failure to speak with police. Evidence that Petitioner had declined to speak with Detective Steller was therefore merely cumulative.

In short, claim three is without merit and Petitioner has failed to establish cause for his procedural default of claim two.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case. Petitioner asserts that he is actually innocent of the charges and that he was convicted based on the testimony of an unreliable and incompetent child without any corroborating evidence. *See Reply*.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary

case.'" *Id.* at 321, 115 S.Ct. 851.

*Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005). Petitioner has failed to meet this standard here.

## CLAIM FOUR

In claim four, Petitioner asserts that he was denied constitutionally fair notice of the charge against him because the indictment failed to include the required *mens rea* of recklessness. The state appellate court rejected this claim, reasoning as follows:

> [A]ppellant argues that we must reverse his rape conviction because the indictment was defective. We disagree.
>
> In *State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, ¶ 1, 19 *("Colon I"),* the Supreme Court of Ohio held that a defendant convicted for robbery in violation of R.C. 2911.02(A)(2) could raise for the first time on appeal the issue of the indictment being defective for failing to charge the requisite culpable mental state ("*mens rea*") of recklessness. The court concluded that structural error, and not plain error, applied because the defect in the indictment led to significant errors throughout the defendant's trial. *Colon* at ¶ 23. As an example, the court noted that the prosecution invoked the wrong *mens rea* at trial, and the jury instructions did not indicate the proper *mens rea. Id.* at ¶ 31. The court reversed the defendant's conviction upon finding structural error in the defendant's indictment. *Id.* at ¶ 32, 45. The court recognized that the existence of "'structural error mandates a finding of "*per se* prejudice." ' " (Emphasis omitted.) *Id.* at ¶ 20, quoting *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 9.
>
> On reconsideration, the court clarified its decision in *Colon I. State v. Colon,* 119 Ohio St.3d 204, 2008-Ohio-3749 (" *Colon II* "). The court stated that the structural-error analysis "is appropriate only in rare cases, such as *Colon I,* in which multiple errors at the trial follow the defective indictment." *Id.* at ¶ 8. According to the court, "[s]eldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis." *Id.*
>
> Here, appellant asserts that the rape indictment against him was

defective because it did not state the required *mens rea*. Appellant contends that both *Colon I* and *II* establish that he may raise the issue for the first time on appeal, even though he did not raise the issue to the trial court. Appellant also argues that, under *Colon I* and *II,* the defective indictment is structural error and, therefore, that we must reverse his conviction.

R.C. 2907.02(A)(1) governs appellant's rape charge and states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

The indictment against appellant specifically charged rape under R.C. 2907.02(A)(1)(b), and the indictment alleged that appellant "did engage in sexual conduct" with D.W., a four-year-old child. The indictment did not specify a *mens rea* pertaining to appellant's awareness of D.W.'s age, and the indictment did not specify a *mens rea* pertaining to the sexual conduct. Appellant first asserts that strict liability applies to the age element of the rape charge, however. Therefore, appellant concedes that the indictment was not defective for not specifying a *mens rea* on appellant's awareness of D.W.'s age, and we agree.

Strict liability eliminates the *mens rea* requirement in certain crimes. *State v. Squires* (1996), 108 Ohio App.3d 716, 718; *Staples v. United States* (1994), 511 U.S. 600, 607, fn. 3. See, also, *State v. Lozier,* 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 18 (recognizing that the mental state of an offender is part of every criminal offense in Ohio except

for those that impose strict liability). Strict liability statutes do not require the defendant to know the facts that make his conduct fit the definition of the offense. *Staples* at 607, fn. 3. Rather, with strict liability, the prosecution need only prove that the offender engaged in a voluntary act or omission. *Squires* at 718. An indictment is not defective for failing to specify that strict liability applies. See *State v. Peterson,* Cuyahoga App. No. 90263, 2008-Ohio-4239, ¶ 14-15; *State v. Mason,* Lucas App. No. L-06-1404, 2008-Ohio-5034, ¶ 64-65; *State v. McGinnis* (Nov. 10, 2008), Van Wert App. No. 15-08-07, ¶ 27, 30 (slip copy). See, also, *State v. Parker,* Cuyahoga App. No. 90256, 2008-Ohio-3681, ¶ 36 (stating that, under *Colon I,* the *mens rea* is a necessary element that must be contained in an indictment, except in cases of strict liability offenses).

Strict liability applies to statutes that "plainly indicate a purpose to impose it." *Lozier* at ¶ 21; *State v. Maxwell,* 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 21; R.C. 2901.21(B). Here, an offender commits rape under R.C. 2907.02(A)(1)(b) when the victim is less than 13 years old "whether or not the offender knows the age of the other person." This provision plainly indicates that strict liability applies to the age element of rape. See *State v. Haywood* (June 7, 2001), Cuyahoga App. No. 78276; *State v. Gillingham,* Montgomery App. No. 20671, 2006-Ohio-5758, ¶ 91. Therefore, the indictment against appellant was not defective for failing to specify a *mens rea* on the age element. See *Peterson* at ¶ 14-15; *Mason* at ¶ 64-65; *Parker* at ¶ 36; *McGinnis* at ¶ 27, 30.

Appellant argues that the indictment was defective for not specifying a *mens rea* on the sexual conduct element, however. R.C. 2907.02(A)(1) does not express a specific *mens rea* on the sexual conduct element. Likewise, R.C. 2907.01(A) defines sexual conduct and expresses no applicable *mens rea*. In *State v. Astley* (1987), 36 Ohio App.3d 247, 249, we analyzed the similarly worded predecessor to the current rape statute. See *Astley* at 248-249. See, also, Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1908-1909 (enacting the rape statute under review in *Astley* ). We noted that the statute did not specify a *mens rea* for sexual conduct with a child under 13 years old, but the statute expressed *mens rea* for other forms of rape. *Astley* at 249. Based on this statutory language, we concluded that strict liability applied to the sexual conduct element of raping a child under 13. *Id.* at 249. In *State v. Nicodemus* (May 15, 1997), Franklin App. No. 96APA10-1359, we followed *Astley* to hold that strict liability applies to the sexual conduct element of raping a child under 13 years old pursuant to the current R.C. 2907.02(A)(1)(b).

Appellant argues that *Lozier* overruled *Astley* and *Nicodemus.* In

*Lozier,* the Supreme Court of Ohio analyzed whether strict liability governed R.C. 2925.03(C)(5)(b), the penalty provision for trafficking LSD. That provision states:

* * * The penalty for [trafficking in LSD] shall be determined as follows:

(b) * * * [I]f the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in L.S.D. is a felony of the fourth degree * * *.

The court recognized that R.C. 2925.01(BB) states that an offense is committed " 'in the vicinity of a juvenile' " if the offense is committed within 100 feet of a juvenile or within the view of a juvenile. *Lozier* at ¶ 35. The court then noted that R.C. 2925.01(BB) specifies that an offense is committed " 'in the vicinity of a juvenile' " regardless of (1) whether the offender knows the age of the juvenile, (2) whether the offender knows the offense is being committed within 100 feet of the juvenile or within the view of the juvenile or (3) whether the juvenile actually views the commission of the offense. *Id.* The court concluded that R.C. 2925.01(BB) "employs strict liability terms" and "makes it abundantly clear that the offender's mental state is irrelevant in determining whether the offender has committed an offense 'in the vicinity of a juvenile.' " *Lozier* at ¶ 34, 36.

Next, the court analyzed the definition of "in the vicinity of a school" in the version of R.C. 2925.01(P) in effect at the time of its decision. *Lozier* at ¶ 37-38. At the time, R.C. 2925.01(P) "lack[ed] the express strict liability language of R.C. 2925.01(BB)" and specified no other *mens rea. Lozier* at ¶ 37-38. *See, also*, Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7369 (enacting the version of R.C. 2925.01[P] under review in *Lozier* ). Instead, the statute simply stated that an offense is " 'committed in the vicinity of a school' " if the offender commits the offense on school premises, in a school building or within 1,000 feet of the boundaries of any school premises. *Lozier* at ¶ 37-38. *Compare* Am.Sub.H.B. No. 163, 150 Laws of Ohio, Part III, 4620, 4640 (enacting the current version of R.C. 2925.01[P] that contains the strict liability language akin to R.C. 2925.01 [BB] ).

Comparing the two definition sections, the court concluded that "the stark contrast between the definition of 'committed in the vicinity of a school' and the definition of 'committed within the vicinity of a juvenile' indicates that the General Assembly did not intend to impose strict liability for selling LSD in the 'vicinity of a school' section." *Lozier* at ¶ 39. Therefore because the "in the vicinity of a

school" section did not otherwise contain a *mens rea*, recklessness applied pursuant to R.C. 2901.21(B) ( "[w]hen the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense").

According to appellant, *Lozier* establishes that strict liability does not apply to the sexual conduct element to child rape under R.C. 2907.02(A)(1)(b) because the statute explicitly applies strict liability to the age element. Therefore, appellant argues, recklessness is the *mens rea* for the sexual conduct element, and the indictment against him was defective because it did not specify recklessness as *the mens rea* for the sexual conduct element.

In our view, *Lozier* does not compel application of a recklessness *mens rea* to the rape statute, R.C. 2907.02(A)(1). In *Lozier,* the court looked to provisions indicating the General Assembly's intent to treat the two definitions differently. Here, we have no apparent intent to treat the age element and the sexual conduct element differently.

Based on the statutory construction of R.C. 2907.02(A)(1), we begin our analysis with *State v. Wac* (1981), 68 Ohio St.2d 84. In *Wac,* the Supreme Court of Ohio analyzed R.C. 2915.03, which states:

(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

(2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code.

The court recognized the inclusion of recklessness in subsection (2), but the absence of a *mens rea* in subsection (1). *Wac* at 87. The court concluded that this statutory construction " 'plainly indicates a purpose to impose strict criminal liability' " to subsection (1). *Id.,* quoting R.C. 2901.21(B).

The court relied on *Wac* in *Maxwell.* In *Maxwell,* the court analyzed R.C. 2907.321, which states:

(A) No person, *with knowledge of the character of the material or performance involved,* shall do any of the following:

* * *

(6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers. (Emphasis added.)

24

Specifically, the court discussed whether strict liability applied to an offender bringing child pornography into the state of Ohio in violation of R.C. 2907.321(A)(6). *Maxwell* at ¶ 22-31. The court recognized the inclusion of a knowledge *mens rea* in the main provision in R.C. 2907.321(A) and the absence of a *mens rea* elsewhere in the statute. *Id.* at ¶ 29-30. The court concluded that this statutory construction plainly indicates that strict liability applies to the act of bringing child pornography into the state of Ohio. *Maxwell* at ¶ 24-30.

Although *Lozier* subsequently applied a different analysis than *Maxwell* and *Wac,* the Supreme Court of Ohio has recently indicated that *Maxwell* and *Wac* remain good law. *See State v. Fairbanks*, 117 Ohio St.3d 543, 2008-Ohio-1470. In *Fairbanks,* the court applied *Maxwell* and *Wac* in determining the *mens rea* of R.C. 2921.331(C)(5)(a)(ii), a penalty enhancement provision for the offense of failure to comply with an order or signal of a police officer. *See Fairbanks* at ¶ 14. The court noted that R.C. 2921.331(C)(5)(a)(ii) does not specify a *mens rea*, but R.C. 2921.331(B), which establishes the failure to comply offense, "specifies the degree of culpability as willful." *Fairbanks* at ¶ 14. Relying on *Maxwell* and *Wac,* the court concluded that strict liability applies to R.C. 2921.331(C)(5)(a)(ii) because paragraph (B) of the statute specifies a "willful" *mens rea*, but subsection (C)(5)(a)(ii) specifies no *mens rea*. *Fairbanks* at ¶ 14.

Finally, we note that the Supreme Court of Ohio recently distinguished *Maxwell* and applied *Lozier* in applying a recklessness *mens rea* to R.C. 2923.13(A)(3) (having a firearm while under indictment). *State v. Clay,* Slip Opinion No.2008-Ohio6325. Nevertheless, we conclude that *Maxwell* is applicable here, given the statutory construction at issue and the "strong stance against sex-related acts involving minors, as evidenced by the numerous statutes in the Ohio Revised Code providing for criminal liability for those acts." *Maxwell* at ¶ 30.

Here, considering rape under R.C. 2907.02(A)(1) in its entirety, we note that the statute includes a purposely *mens rea* in subsection (a) and a knowingly *mens rea* in subsection (c), but the statute states no *mens rea* on the sexual conduct element in the main provision. Thus, the statutory construction of R.C. 2907.02(A)(1) plainly indicates that strict liability applies to the sexual conduct element of the statute, which encompasses child rape in subsection (b). Because strict liability applies to the sexual conduct element of rape under R.C. 2907.02(A)(1)(b), the indictment against appellant was not defective for failing to specify a *mens rea* on that element. See *Peterson* at ¶ 14-15; *Mason* at ¶ 64-65; *Parker* at ¶ 36; *McGinnis* at ¶ 27, 30.

Accordingly, we need not reverse appellant's conviction under *Colon I* and *II*. We overrule appellant's sixth assignment of error.

*State v. Ferguson,* 2008 WL 5265893, at *15-19.

In *Moviel v. Smith*, No. 1:008-cv-1612, 2010 WL 148141, at *13 (N.D. Ohio Jan. 12, 2010), the Court discussed the constitutional requirement of fair notice of the charges:

> Procedural due process requires that the indictment: "(1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Joseph v. Coyle,* 469 F.3d at 463 (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir.2005)); and *see Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.C. 514, 92 L.Ed. 644 (1948). The law is clear that "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir.2002) (citing *Mira v. Marshall,* 806 F.2d 636, 639 (6th Cir.1986)). The Constitution only requires that whatever charging method a state employs, the state must give a defendant fair notice of the charges to permit adequate preparation of his defense, so "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Olsen v. McFaul,* 843 F.2d 918, 930 (6th Cir.1988); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir.1984); *Combs v. Tennessee,* 438 F.2d 695, 698 (6th Cir.1976) *cert. denied,* 425 U.S. 954 (1976); *In re Ruffalo,* 390 U.S. 544, 88 S.C. 1222, 20 L.Ed.2d 117 (1968).

*Id.* at 13. Here, Petitioner was provided fair notice of the charges such that he could adequately prepare his defense. The state appellate court determined that the crime at issue constituted a strict liability offense, which required no *mens rea*. This Court must defer to a state court's interpretation of its own laws and statutes. *See Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(citations omitted).

Claim four fails to provide a basis for federal habeas corpus relief.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

___*s/ Norah McCann King*___
Norah McCann King
United States Magistrate Judge

December 6, 2011